# OPINIONS OF THE JUSTICES.

## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Confrontation of witnesses. *Witness*, Child, Unavailability, Credibility. *Practice, Criminal*, Fair trial. *Evidence*, Hearsay.

In response to a question concerning the constitutionality of proposed legislation to authorize the admissibility at trial of certain out-of-court statements of child victims of alleged sexual abuse, the Justices were of opinion that a child victim's refusal to testify at a criminal trial could not be the basis, consistently with art. 12 of the Massachusetts Declaration of Rights, for a judicial finding of "unavailability" for the purpose of admitting in evidence such out-of-court statements. [1211]

In response to a question concerning the constitutionality of proposed legislation to authorize the admissibility at trial of certain out-of-court statements of child victims of alleged sexual abuse, the Justices were of opinion that the standards for determining the reliability of such hearsay statements ("time, content and circumstances") did not assure the measure of reliability required under art. 12 of the Massachusetts Declaration of Rights for exceptions to the hearsay rule as applicable to criminal trials. [1212-1216]

Notwithstanding a provision set forth in a proposed act to authorize the admissiblity at trial of certain out-of-court statements of child victims of alleged sexual abuse that there be "corroborative evidence of the sexual contact" in order for such statements to be admitted in evidence, the Justices were of opinion that the proposed legislation did not satisfy the mandate of art. 12 of the Massachusetts Declaration of Rights that an accused is entitled to confront the witnesses against him. [1217-1218]

The Justices' opinion that certain proposed legislation contravened provisions of art. 12 of the Massachusetts Declaration of Rights was confined to that aspect of the particular proposed legislation that concerned criminal proceedings in which the victim does not testify. [1218-1219]

On November 28, 1989, the Justices submitted the following answer to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit their response to the questions set forth in an order adopted by the Senate on July 19, 1989, and transmitted to this court on July 25, 1989.[1] The order indicates that there is pending before the General Court a bill printed as Senate No. 795 entitled, "An Act authorizing the admissibility of out-of-court statements of child victims of sexual assault." A copy of the bill was transmitted with the order. The order recites: "Senate bill No. 795 would, in part, permit certain statements made 'out-of-court' by a child under the age of ten years to be admissible as evidence in a criminal or civil proceeding under certain conditions . . . ."[2]

---

[1]We invited interested persons to file briefs on or before August 28, 1989, and thereafter approved requests that the deadline be extended to September 28, and then to October 4, 1989. We acknowledge the assistance of briefs from: the Administrative Justice of the Juvenile Court Department; the Attorney General, the Massachusetts District Attorneys' Association, the district attorneys for the Eastern, Hampden, Northern, Plymouth, Suffolk, Worcester, Cape and Islands, and Northwestern Districts; the Committee for Public Counsel Services; the Department of Social Services and the Office for Children; the Massachusetts Committee for Children and Youth and the Massachusetts Child Welfare League of America Executives Group; the Massachusetts Society for the Prevention of Cruelty to Children; the National Association of Social Workers; and Attorney Jacqueline Y. Parker.

[2]The bill provides -

"Chapter 233 of the General Laws is hereby amended by adding the following sections:

"Section 81. (a) The out-of-court statement of a child under the age of ten describing any act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator is admissible in any criminal or civil proceeding provided that the judge shall make and enter specific findings on the record, describing facts with particularity, demonstrating that:

"(1) the time, content and circumstances of the statement provide sufficient safeguards of reliability; and

"(2) the child giving the statement testifies as a witness; or

The order also indicates that grave doubt exists as to the constitutionality of the bill, if enacted into law, and requests our opinion on these questions:

"1. Would said bill, Senate No. 795, if enacted into law, be in contravention of Article XII of Part the First of the Constitution of Massachusetts in that it would deny a person the right 'to meet the witnesses against him face to face'?

"2. Would said bill, if enacted into law, be in contravention of Article VI of the Amendments to the Constitution of the United States in that it would deprive a person of the right 'to be confronted with the witnesses against him'?"

We answer the first question in the affirmative. Consequently, we consider it unnecessary to answer the second question.

---

"(3) the child is unavailable as a witness and there is corroborative evidence of the sexual contact.

"(b) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and of the particulars of the statement.

"Section 82. (a) A child shall be deemed unavailable as a witness for ·the purposes of utilizing out-of-court statements under the provisions of section eighty-one if:

"(1) the witness is unable to be present or to testify because of death or then existing physical or mental illness or infirmity; or

"(2) the witness is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

"(3) the witness persists in refusing to testify concerning the subject matter of his statement or testifies to a lack of memory of the subject matter of his statement; or

"(4) the witness is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means; or

"(5) the court finds beyond a reasonable doubt that testifying would be likely to cause severe and long-lasting psychological or emotional trauma; or

"(6) the witness is not competent to testify.

"(b) A finding of unavailability under (a)(5) above shall be supported by expert testimony."

1. *Conflicting Considerations.* Before beginning our examination of Senate No. 795, we delineate the tension which underlies the questions presented. Two major interests are inextricably in conflict: the significant societal interest in reducing the trial-related trauma of child victims of sexual assault and in having their evidence submitted to the fact finder so that pernicious malefactors may be brought to justice; and the constitutional and societal imperatives of assuring the integrity of the fact-finding process and of honoring the time-honored rights of an accused to confront his accusers in a court of law.

Indeed, the Supreme Judicial Court often has recognized the tension between these conflicting, and valid, interests. "This court is acutely aware of the plight of child sexual assault victims and traditionally has been sensitive toward meeting the needs of these young witnesses. See, e.g., *Globe Newspaper Co.* v. *Superior Court,* 379 Mass. 846, 858-860 (1980), rev'd, 457 U.S. 596 (1982). '[S]afeguarding the physical and psychological well-being of a minor' is indeed a compelling State interest. *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 607 (1982). We are cognizant . . . that the problem of sexual abuse is widespread." *Commonwealth* v. *Bergstrom,* 402 Mass. 534, 552 (1988).

On the other hand, "[s]ociety may justify a person's conviction only after a trial scrupulous in its adherence to a process which, so far as humanly possible, assures that the innocent are not mistakenly deprived of liberty. The right of the accused to be tried in the manner which our Constitution [art. 12] guarantees cannot dissolve under the pressures of changing social circumstances or societal focus." *Id.* at 553.

a. *Sexual abuse of children.* Most briefs before the court, and much of the pertinent literature, relate the special difficulty in prosecuting allegations of sexual abuse of children. As the briefs recite, and our experience confirms, the victim and the perpetrator may be the only witnesses; corroborative evidence may be absent or inconclusive; the victim may retract a true account of an incident of sexual abuse because of fear, guilt, shame, or self-blame; the victim may refuse to

testify or be an ineffective witness; and the victim may feel punished if removed from home for protection or guilty if the alleged offender is removed from the home. Skoler, New Hearsay Exceptions for a Child's Statement of Sexual Abuse, 18 J. Marshall L. Rev. 1, 5-7, 41-42 (1984). Moreover, there may be trauma for the child in preparing for, and testifying at, a trial. *Id.* at 6-7. Parents may be reluctant to have their child subjected to the further trauma of being the chief prosecution witness at an adult criminal trial. Note, The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis, 8 J. Juv. L. 59, 60 (1984).

In addition, it is claimed that a child's memory fades rapidly over time; that the account given closer to the actual event is more likely to be accurate; and that the inability to remember details may be significant given the lapse of time between the offense and the trial. Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum. L. Rev. 1745, 1749-1751 (1983). See Note, Minnesota's Hearsay Exception for Child Victims of Sexual Abuse, 11 Wm. Mitchell L. Rev. 799, 800-802 & nn. 2-9 (1985). One response, represented in Senate No. 795, is that of rendering certain out-of-court statements of child victims of sexual abuse admissible at trial.

b. *Confrontation.* We are asked to consider this proposed remedy in light of the cited State and Federal constitutional provisions which provide for a person's right to confront the witnesses against him. These provisions have a rich heritage.

The United States Supreme Court, in discussing the Sixth Amendment's right of confrontation, stated that the specific language "comes to us on faded parchment" and that its lineage may be traced to the beginnings of Western legal culture. *Coy* v. *Iowa*, 487 U.S. 1012, 1015 (1988). Almost one century ago, the Court stated that the primary object of that provision of the Sixth Amendment is "to prevent depositions or ex parte affidavits . . . being used against the prisoner." *Mattox* v. *United States*, 156 U.S. 237, 242 (1895). Accord *Commonwealth* v. *Millen*, 289 Mass. 441, 455 (1935) (art. 12). Rather, the preference is for cross-examination (under

oath) in which the accused might test the recollection, and sift the conscience, of the witness and in which the jury might determine whether he or she is worthy of belief, by his or her demeanor and the manner in which the witness gives testimony. *Mattox* v. *United States, supra* at 242-243. More recently, Justice Marshall observed that the drafters of the Sixth Amendment may have been influenced by the plight of Sir Walter Raleigh, who had been condemned on the basis of a deposition by an alleged accomplice who had recanted. *United States* v. *Inadi*, 475 U.S. 387, 411 (1986) (Marshall, J., dissenting).

As for the States, one commentator suggests that the expressed intentions of the British to try colonists in England for crimes allegedly committed in the colonies, thus involving the use of depositions or ex parte affidavits by the prosecution, led to the inclusion in the Virginia Declaration of Rights of 1776 of the right of confrontation. Larkin, The Right of Confrontation: What Next?, 1 Tex. Tech. L. Rev. 67, 77 (1970). He states that, if the Colonial legislators had not intended to give the accused the benefit of face-to-face cross-examination of the witness personally and in the presence of the trier of fact who could judge his demeanor and credibility, the indications are that they would have chosen different language. *Id.* Massachusetts, he notes, used "the more graphic and explicit 'to meet the witnesses against him face to face' " instead of the word "confront" used by other States. *Id.* at 78. See Clinton, The Right to Present A Defense: An Emergent Constitutional Guarantee in Criminal Trials, 9 Ind. L. Rev. 713, 730 (1976). A purpose of the early State provisions may have been to preserve in criminal cases the hard-won principle of the hearsay rule which had been accepted in England for over one hundred years. McCormick, Evidence § 252, at 750 (3d ed. 1984). See Note, *Coy* v. *Iowa*: The Right to Face-to-Face Confrontation, 26 Hous. L. Rev. 739, 748 (1989).

The Supreme Judicial Court recently focused on the intersection of these considerations: the difficulty of prosecuting cases of alleged sexual abuse of children and the commands

of art. 12. In *Commonwealth* v. *Bergstrom, supra* at 541-542, we acknowledged the court's acute awareness of the plight of child sexual assault victims but stated that "[c]onstitutional language more definitively guaranteeing the right to a direct confrontation between witness and accused is difficult to imagine."

2. *Article 12.* We examine the bill under that portion of art. 12 of the Commonwealth's Declaration of Rights which specifies:

> "No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; *to meet the witnesses against him face to face . . .*" (emphasis added).

Over a century and one-half ago, the court stated that art. 12 "was made to exclude any evidence by deposition, which could be given orally in the presence of the accused." *Commonwealth* v. *Richards*, 18 Pick. 434, 437 (1836). In discussing the admissibility of certain dying declarations, the court explained that, because they are made under the apprehension of immediate death, they are entitled to all the credit which would be given to them if the declarant had made them under oath. *Id.* The court also stated it significant that testimony as to what a deceased witness testified in a former trial be between the same parties on the same issue. *Id.* at 437-438. Moreover, the court added that the whole of what the deceased witness said should be proved because some part of what was said and not recollected might limit and qualify the meaning of the words which are recollected. *Id.* at 439. Even the entire statement can be defective, the court added, because one does not receive "a true representation of the countenance, manner and expression of the deceased witness." *Id.*

Thus, early precedent, as well as more recent decisions, clearly demonstrates, that two of the major protections guaranteed by the right of confrontation are that the probative statement be one given under oath (or its functional equivalent) and that, ordinarily, the cognate witness be subject to cross-examination. See *California* v. *Green*, 399 U.S. 149, 158 (1970) (one aspect of the confrontation right is that a witness knowingly shall give testimony under oath); *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 541 (1988) (same).

Although the situation discussed in the *Richards* opinion is not identical to what might arise if the pending bill were to become law, the court's discussion of why dying declarations are not excluded by art. 12, and its examination of the admissibility of the testimony at a prior trial of a deceased witness, are instructive. Dying declarations are treated as if given under oath, and prior recorded testimony was given under oath. The pending bill would not require that the out-of-court statement have been given under oath, or in circumstances inherently demonstrating a special guarantee of reliability (e.g., in a dying declaration with knowledge of impending death, or a spontaneous excited utterance). Instead, the bill requires that the judge make findings, describing facts with particularity, demonstrating that "the time, content and circumstances . . . provide sufficient safeguards of reliability."

We draw additional insight from the court's subsequent explanation that the reason for the admission, at a second trial, of testimony given at the original trial of the same case by a witness since deceased or insane is based "upon necessity and has for its end the attainment of substantial justice." See *Ibanez* v. *Winston*, 222 Mass. 129, 130 (1915). Furthermore, the court has said that the principle of the *Richards* case "permitted the admission of kinds of evidence not thought of at the time of the adoption of the Constitution if falling within the settled rules of the common law." *Commonwealth* v. *Gallo*, 275 Mass. 320, 330-331 (1931), and cases cited. See *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 430 (1988).

*Gallo* reminds us that the guarantee of art. 12 "is not to be tested by a mere enumeration of specific instances of the admission or exclusion of . . . evidence." *Commonwealth* v. *Gallo, supra* at 333. This is because art. 12 "states a great principle of government for the security of liberty and the ascertainment of truth in prosecutions for crime." *Id.* The purpose of the article is to render beyond the possibility of alteration, except by the people, the principle already established as part of the common law, while encompassing certain well-recognized exceptions, that witnesses should confront the accused face to face. *Id.*

The court in *Gallo* determined that there was no error of law and no violation of art. 12 as a consequence of the admission at a second trial of the testimony given at the first trial by a witness who had disappeared and who could not be produced in person. *Id.* at 328, 334. The witness had been cross-examined fully on behalf of the defendant, and her testimony had been taken stenographically. *Id.* at 328. The court noted that one of the main purposes of the common law rule regarding the production of testimony in criminal cases, that its credibility be tested by cross-examination, had been achieved. *Id.* at 333-334. We add, to highlight the contrast with the procedure provided in the pending bill, that the testimony also had been given under oath and had been preserved accurately. In terms pertinent here, the court stated: "Changed conditions afford no warrant for straining the Constitution. But they require that the common law within the limits of the Constitution shall adapt its principles to meet present needs." *Id.* at 334.

Although the requirements of confrontation may be subject to "limited exceptions," we stated in *Commonwealth* v. *Bergstrom, supra* at 545:

> "As a constitutional minimum, if the prosecution can demonstrate that a declarant whose statement it wishes to use against the defendant is unavailable to testify during the trial, that statement may be admissible if imbued with such trustworthiness and indicia of relia-

bility that 'there is no material departure from the reason of the general rule.' *Ohio* v. *Roberts*, 448 U.S. 56, 65 (1980), quoting *Snyder* v. *Massachusetts*, 291 U.S. 97, 107 (1934). See *Commonwealth* v. *Bohannon*, 385 Mass. 733, 742-743 (1982). Hearsay exceptions that provide particularized guarantees of trustworthiness may be constitutionally valid. *Commonwealth* v. *Trigones*, 397 Mass. 633, 637-638 (1986). Absent a showing of unavailability at the time of trial, however, even reliable hearsay evidence is inadmissible. See *Commonwealth* v. *Bohannon, supra* at 744-749."

We turn now to a more focused examination of Senate Bill 795.

*Senate No. 795.* In *Commonwealth* v. *Bohannon*, 385 Mass. 733, 740-749 (1982), the court focused on two critical factors which are of primary concern in our evaluation of the pending bill: the unavailability of the witness and the reliability of the prior testimony. *Id.* at 741. After noting that the necessities of the case and the attainment of justice (considerations also before us now) warrant the admissibility of hearsay in some cases, the court examined the concepts of unavailability and reliability in detail. *Id.* at 741-749.

The prosecution bears the burden of establishing the necessity for admission of the prior statement through establishing the person's unavailability at the time of the trial. *Id.* at 742. Moreover, the degree of good faith and due diligence required exceeds that necessary in other situations. *Id.* at 745. The court divided reliability into two segments—the reliability of the testimony when given, and the accuracy of the evidence of that testimony. *Id.* at 746. Reliability, we said, could be assured by the circumstances attending the giving of the testimony and the manner in which it is preserved and restated.[3] *Id.* at 747, and cases cited.

---

[3]See *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 428 (1988); *Commonwealth* v. *Salim*, 399 Mass. 227, 235 (1987); *Commonwealth* v. *Trigones*, 397 Mass. 633, 637 (1986); *Commonwealth* v. *Furtick*, 386 Mass. 477, 480 (1982).

a. *Availability*. The pending bill reflects the consideration by its drafters of the essential elements of availability and reliability. Proposed § 82 (*a*) specifies the circumstances under which a child shall be deemed to be unavailable. They include death, then existing physical or mental illness or infirmity, exemption by "ruling of the court" on the basis of privilege, a refusal to testify concerning the subject matter of the statement or testimony as to a lack of memory, absence in the face of process or other reasonable means of procuring the child's attendance, incompetence, or a finding beyond a reasonable doubt that testifying would be likely to cause severe and long-lasting psychological or emotional trauma.[4] We note that there is no explicit requirement of good faith and due diligence in establishing unavailability. See *Commonwealth* v. *Bohannon*, *supra* at 745 (greater good faith and due diligence required to show unavailability when offering former testimony against an accused).

We are reluctant to recognize, on the information before us, that a child who has made an out-of-court statement properly would be deemed unavailable because (as the pending bill seems to provide) the child refuses to testify. See *Commonwealth* v. *Kirouac*, 405 Mass. 557, 562-563 (1989). The trial judge would be required to make findings demonstrating that the child is unavailable as a witness. We do not, however, equate a refusal to testify, for example, with that measure of necessity which we have held permits the use of prior testimony. See *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 332 (1986).

---

[4]Some of these categories are similar to provisions in Fed. R. Evid. 804(a) (1989) and Proposed Mass. R. Evid. 804(a). Many of the circumstances of unavailability set forth in the bill, e.g., death, physical illness or infirmity, privilege, and absence from the jurisdiction are recognized at common law. See, e.g., *Commonwealth* v. *Bohannon*, *supra* at 740-749, and authorities cited; *Commonwealth* v. *Canon*, 373 Mass. 494, 499-500 (1977) (privilege against self-incrimination), cert. denied, 435 U.S. 933 (1978); *Commonwealth* v. *DiPietro*, 373 Mass. 369 (1977) (statutory privilege); *Commonwealth* v. *Clark*, 363 Mass. 467 (1973) (missing witness); *Commonwealth* v. *Gallo*, 275 Mass. 320, 331 (1931) (death, insanity).

b. *Reliability.* Even if we were to assume that the applicable standards of unavailability would be met,[5] we must consider the question of reliability. The pending bill specifies that a trial judge must make specific findings on the record, describing facts with particularity which demonstrate that "the time, content and circumstances of the statement provide sufficient safeguards of reliability." Thus, a judge would not be required to consider the traditional indicia of reliability, such as whether the statement was given under oath, in a prior proceeding, accurately recorded and preserved, and with an opportunity for cross-examination by counsel for the defendant.

Should a child's hearsay statements be admitted under the standards of Senate 795, an appellate court would be required to review findings that "the time, content and circumstances of the statement provide sufficient safeguards of reliability." We note that, under the bill, the judge need not hold a separate hearing or meet with the declarant.

In evaluating this proposed standard we turn to our experience with other exceptions to the hearsay rule. A dying declaration, for example, is not admissible unless the declarant has lost all hope of recovery and speaks under a sense of impending death and is unavailable because of death. See *Commonwealth* v. *Polian*, 288 Mass. 494, 497 (1934), and cases cited.[6] Here, the child might not feel the same obligation to

---

[5]We put aside for the moment the bill's provision for hearsay as probative evidence even when the child is available. See § 81 (*a*) (2), note 2, *supra*. See also note 8, *infra*.

[6]Under our common law humane practice, after the judge has found the facts making a dying declaration admissible, the defendant has a second opportunity to have it excluded from consideration by the jury if they also do not find those facts by a preponderance of the evidence. *Commonwealth* v. *Polian*, 288 Mass. 494, 498-499 (1934). However, the preliminary findings of the judge are critical to the proper determination of the admissibility of a dying declaration; thus, we do not imply that a provision in the bill adding the concept of the humane practice is necessary, or that, if present, such a provision would cure the defects in the bill on which we focus our discussion.

tell the truth which we attribute to one who speaks under a sense of impending death.

Massachusetts also recognizes a declaration against penal interest as an exception to the hearsay rule. See *Commonwealth v. Galloway*, 404 Mass. 204, 207 (1989). For such a statement to be admissible, the declarant must be unavailable; the statement must tend to subject the declarant to criminal liability to such an extent "that a reasonable man in his position would not have made the statement unless he believed it to be true"; and, if offered in exculpation, the statement must be corroborated by circumstances which clearly indicate its trustworthiness. *Id*. at 207-208, and cases cited. Unlike a person who makes a declaration against penal interest, children who make out-of-court statements which would be admissible under the pending bill are not required to have an appreciation of the possible consequences of their statements.

Other exceptions to the hearsay rule, including certain guilty pleas, implied admissions, and spontaneous exclamations, as well as declarations as to physical condition (but not the narration of the circumstances), mental condition (state of mind), and pedigree are part of our law. P.J. Liacos, Massachusetts Evidence 278-356 (5th ed. 1981 & Supp. 1985). The proposed change represents more than a mere extension of the principles which underlie the mentioned exceptions to the hearsay rule. The pending bill would render admissible statements which could be the products of reflection, which would be about the conduct of other (named) persons, and which need not have been accurately preserved in their entirety.[7]

---

[7]The Federal rules contain provisions for the admission of:

"A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be

We consider the bill's requirement that the trial judge make specific findings demonstrating that the time, content and circumstances of the child's statement provide sufficient safeguards of reliability. Here, we evaluate the possible effectiveness of these provisions by identifying factors which might undermine the reliability of a statement, and then determining whether this proposed mechanism is sufficiently sensitive to them. We assume again that the child will not be available as a witness.[8]

Ambiguity, insincerity, faulty perception, and erroneous memory have been described as the four possible inaccuracies in the inferential chain which links a statement of one not subject to contemporaneous in-court cross-examination about that statement, to an event that the statement is supposed to reflect.[9] See Tribe, Triangulating Hearsay, 87 Harv. L. Rev. 957, 958 (1974). We do not doubt that a trial judge would be able to consider the statement's degree of ambiguity when determining its reliability. However, we do not know at what point the statement would be so ambiguous as to be unreliable.

In this context it is important to understand that the bill presupposes the exception to apply to the major or complaining witness, not to other witnesses. See *Commonwealth v. Kirouac*, 405 Mass. 557, 561 (1989) (materiality of the witness's direct testimony must be weighed). If we assume that the issue of ambiguity would be appropriately resolved at trial, we are less sanguine about identifying insincerity.

served by the admission of the statement into evidence." Fed. R. Evid. 803 (24) and 804 (b)(5) (1989).

We note that the Federal rule is more restrictive than the pending bill in that the statement must be "more probative on the point . . . than any other evidence which the proponent can procure through reasonable efforts."

[8]In *Commonwealth v. Bergstrom*, 402 Mass. 534, 544 (1988), the court noted "that we have never interpreted art. 12 as permitting introduction of an available witness's testimony outside a defendant's presence."

[9]We recognize that reliability may be subdivided differently, but use these categories for illustrative purposes.

The bill seems to assume that the judge might gauge more accurately the sincerity of a statement the more closely in time it follows the event at issue (and in light of its content and circumstances). But, what assurance is available as the timing of the statement renders it less comparable to a spontaneous utterance, or even to a fresh complaint? There are too many instances in which the sincerity of a statement may not be discernible from consideration of the time, content, and circumstances. For example, a statement given long after the incident and following many opportunities for possibly prejudicial conversations with, or solicitations by, other persons might be either an absolutely accurate and, therefore, reliable statement or one which has been so shaped by the passage of time and the intervening conversations that it is not reliable. See *Commonwealth v. Bergstrom, supra* at 539 n.4.

The two other factors, faulty perception and erroneous memory, generate even greater concern. A statement which is both unambiguous and sincere might have been influenced by faulty perception or erroneous memory, or both. We are especially skeptical of the effectiveness of an examination of time, content, and circumstances in revealing any measure of the latter two factors in a proffered statement. Moreover, we add that, when making the statement, the child might not be aware of its immediate solemnity or of its possible use in criminal proceedings. In summary, we are not sufficiently confident that a rigorous review of the time, content, and circumstances pertaining to a statement will identify sufficient safeguards of its reliability. The pending bill would ask a trial judge to determine the probative value of an out-of-court statement without requiring him or her to examine its essence.[10] We do not consider these procedures to be an adequate substitute for the right to cross-examine before a jury.

---

[10]In discussing the competency of a child as a witness, the court identified, as the crucial consideration, her capacity to observe, remember, and give expression to that which she had seen, heard, or experienced. *Commonwealth v. Tatisos*, 238 Mass. 322, 325 (1921).

See *Commonwealth* v. *Amirault*, 404 Mass. 221, 234-235 (1989).

We are of opinion that the pending bill does not assure the measure of reliability which we require of exceptions to constitutional aspects of the hearsay rule.[11] The proposed review of the time, content, and circumstances does not compensate adequately for the absence of a statement made under oath and subject to cross-examination. Although a statutory approach allowing a judge to determine the reliability of the statements of an unavailable witness on a case-by-case basis might pass constitutional muster, this is not such a bill. We venture no opinion on whether a statute more closely adhering to the common law safeguards of reliability might suffice.

We recognize that the relationship between the foundation of the hearsay rule and the command of art. 12 is complex, and we seek to avoid constitutionalizing the hearsay law of the Commonwealth.[12] However, we conclude that the pending bill would contravene that portion of art. 12 which entitles a person "to meet the witnesses against him face to face."[13]

---

[11]Without the witness under oath solemnifying the occasion, the jury's observing the witness and the defendant's cross-examining the witness, that testimony may be unreliable "because faults in the perception, memory, and narration . . . will not be exposed." 4 J. Weinstein & M. Berger, Weinstein's Evidence 800-11 (1984).

[12]The state of the relationship between the confrontation clause and the hearsay rule has been described as moving "from complex, to confusing, to downright confused" when the "concepts of the importance of the testimony, the utility of cross-examination, and the burden . . . of producing an available declarant or establishing unavailability are added to traditional reliability confrontation clause analysis, and the concepts of necessity and the adversary system are addressed in the hearsay analysis." Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 Minn. L. Rev. 523, 524 (1988).

[13]In a reference to certain United States Supreme Court decisions, it was stated that "the basic notions behind the hearsay rule are beginning to acquire a constitutional dimension"; and that this may require careful consideration whether proposals to chip away at the rule by new exceptions are faced with a constitutional roadblock in criminal cases. Liacos, Sixth Amendment: The Right of Confrontation, 33 Am. Trial Law J. 243, 262 (1970).

c. *Corroboration.* We reach this result, notwithstanding
the portion of the proposed statute which supplements that
portion concerning the judge's obligation to make findings,
with the provision that the child giving the statement testify
as a witness or be unavailable as a witness "and there is cor-
roborative evidence of the sexual contact." This requirement
of corroboration enhances the pending bill, but not suffi-
ciently to counterbalance the noted objections. The bill would
render admissible a statement describing any *act*, the *cir-
cumstances*, or which identifies the *perpetrator.* However, if
the child is not available as a witness, corroboration of the
*sexual contact* would be required. We recognize that the
very nature of the offenses at issue renders it unlikely that
corroboration of the circumstances, or of the perpetrator, will
be available. Corroborative evidence of the sexual contact
would be helpful to the trier of fact. If all doubt as to
whether "the *sexual contact*" occurred were eliminated, that
necessarily would not remove our concerns regarding the pos-
sible unreliability of the statement concerning the *circum-
stances* and, more significantly, the identity of the
*perpetrator.*

As we read the statute, the out-of-court statement of a
child who is unavailable as a witness would be admissible as
to the act, the circumstances, and the identity of the perpe-
trator, and the corroborative evidence need only pertain to
the sexual contact. Thus, the only evidence of the identity of
the perpetrator which might be before the trier of fact could
be an uncorroborated portion of the child's statement. There
may be instances in which it might be established readily
and beyond a reasonable doubt that the sexual contact oc-
curred and that the person identified in the child's statement
was the only person under the particular circumstances who
had an opportunity to commit the offense alleged. Neverthe-
less, we can also conceive of there being numerous instances
in which persons might be convicted of such offenses, al-
though there be conflicting evidence and with the only evi-
dence of identity being the statements, the essences of which
may never have been appropriately tested.

Our commitment to the sanctity of the fact-finding process precludes us from permitting such risks to become part of the Commonwealth's jurisprudence. This commitment must be one of the guiding principles, no matter how reprehensible the offense. Moreover, the court recently stated: "Article 12 does not discriminate against classes of defendants nor distinguish among categories of crimes." *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 546-547 & n.13 (1988).[14]

4. *Determining the truth*. We underscore that our response to the request of the Senate is not only confined to the pending bill but also to limited aspects thereof (criminal proceedings in which the victim does not testify).[15] We neither pass judgment on all features of the legislation nor reject all possible variations on the concept. We do not dispute the seriousness of allegations of sexual abuse of children, the special complexities of prosecuting and defending against them, and the impact which some victims may experience in preparing for, and participating in, trials. Scholars, legislators, attorneys, and other concerned persons throughout the nation have sought to develop an appropriate accommodation between the interests of the victims and the provisions of State Constitutions. We reiterate that our response does not proclaim that all similar attempts will inevitably conflict with the requirements of our State Constitution.

More specifically, we reemphasize what we stated in *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 332 (1986): "Judges have considerable latitude in devising procedures and modifying the usual rules of trial to accommodate child and other witnesses with special needs, so long as the defendant's fair

---

[14]In order to obtain guidance on the issues we have identified, we reviewed decisions from other jurisdictions. Our examination did not yield material or reasoning which alters the result we reach.

[15]Although Senate No. 795 would apply to both criminal and civil proceedings, we confine our analysis to the former because questions 1 and 2 ask whether the bill, if enacted, would contravene the confrontation right of art. 12 and the Sixth Amendment. See *Commonwealth* v. *McGruder*, 348 Mass. 712, 716 (1965) (art. 12 right of confrontation not applicable to civil proceedings), cert. denied, 383 U.S. 972 (1966).

trial rights are not violated." Later, in *Commonwealth* v. *Bergstrom*, *supra* at 553, the court stated that the decision ought not to be taken as precluding the use by law enforcement agencies, lawyers, and trial judges of methods designed to minimize the stress and trauma which might be imposed on victims and witnesses. See *Commonwealth* v. *Amirault*, *supra* at 243-244.[16]

5. *Conclusion.* For the reasons set forth above, we conclude, and in response to question number 1 we state, that Senate No. 795 would, if enacted into law, contravene that portion of art. 12 which provides that every subject shall have a right "to meet the witnesses against him face to face." As a result, we beg to be excused from answering question number 2.

The foregoing opinion and answer is submitted by the Chief Justice and the Associate Justices subscribing hereto on the 28th day of November, 1989.

> PAUL J. LIACOS
> HERBERT P. WILKINS
> RUTH I. ABRAMS
> JOSEPH R. NOLAN
> NEIL L. LYNCH
> FRANCIS P. O'CONNOR
> JOHN M. GREANEY

---

[16]The underlying issues are before the court with increasing frequency. See, in addition to *Bergstrom*, *Commonwealth* v. *Dockham*, 405 Mass. 618 (1989); *Commonwealth* v. *Tufts*, 405 Mass. 610 (1989); *Commonwealth* v. *Kirouac*, 405 Mass. 557 (1989); *Commonwealth* v. *Amirault*, 404 Mass. 221 (1989).