COMMONWEALTH *vs.* COLIN C., a juvenile.

Worcester. September 13, 1994. - November 28, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Evidence*, Expert opinion, Sexual conduct, Credibility of witness, Hearsay. *Witness*, Expert, Credibility, Child, Unavailability. *Constitutional Law*, Confrontation of witnesses.

At the jury trial of a juvenile charged with kidnapping and sexual assault of three children, the judge erred in allowing in evidence the opinion of a child abuse expert that two of the children had in fact been sexually assaulted. [59-61]

The court set out procedures that a trial judge should follow when admitting evidence consisting of hearsay statements of children pursuant to G. L. c. 233, § 81, and stated that for such statements to be admitted for substantive purposes there must be other evidence, independently admitted, that corroborates the out-of-court statements. [61-66]

COMPLAINTS received and sworn to in the Worcester Division of the Juvenile Court Department on June 3, 1991, and July 9, 1991, respectively.

On appeal to the jury session of that division, the case was tried before *Elliott L. Zide*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph A. Nicastro* for the juvenile.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The juvenile was charged in Worcester Juvenile Court with delinquency by reason of three counts of indecent assault and battery on a child under the age of fourteen, six counts of rape of a child with force, three counts of kidnapping, and intimidation of a witness. He admitted in the bench session to sufficient facts for a finding of delin-

quency on all counts except the intimidation of a witness complaint,[1] and was committed to the Department of Youth Services.

The juvenile appealed to the jury session. Pursuant to the juvenile's motion in limine, the judge conducted hearings to determine the competency of the three child witnesses, to whom we assign fictitious names. The judge determined that nine year old Donald and eight year old Peter were competent to testify. The judge declared the juvenile's youngest complainant, six year old Ned, incompetent to testify because he concluded that Ned did not fully comprehend the consequences of telling a lie. Pursuant to G. L. c. 233, § 81,[2] the judge allowed Ned's mother to testify about her son's ex-

---

[1]The Commonwealth dismissed the intimidation of a witness charge with the juvenile's consent.

[2]General Laws c. 233, § 81 (1992 ed.), provides:

"(*a*) An out-of-court statement of a child under the age of ten describing an act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator shall be admissible as substantive evidence in any criminal proceeding; provided, however, that the statement is offered as evidence of a material fact and is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; the person to whom the statement was made or who heard the child make the statement testifies; the judge finds pursuant to subsection (*b*) that the child is unavailable as a witness; and the judge finds pursuant to subsection (*c*) that the statement is reliable.

"(*b*) The proponent of such statement shall demonstrate a diligent and good faith effort to produce the child and shall bear the burden of showing unavailability. A finding of unavailability shall be supported by specific findings on the record, describing facts with particularity, demonstrating that:

"(1) the child is unable to be present or to testify because of death or physical or mental illness or infirmity; or

"(2) by a ruling of the court, the child is exempt on the ground of privilege from testifying concerning the subject matter of such statement; or

"(3) the child testifies to a lack of memory of the subject matter of such statement; or

"(4) the child is absent from the hearing and the proponent of such statement has been unable to procure the attendance of the child by process or by other reasonable means; or

"(5) the court finds, based upon expert testimony from a treating psychiatrist, psychologist, or clinician, that testifying would be likely to cause severe psychological or emotional trauma to the child; or

tra judicial statements because he found that Ned had made those statements "under circumstances inherently demonstrating a special guarantee of reliability." See G. L. c. 233, § 81 (*c*) (2).

At the close of the Commonwealth's case, the judge allowed the juvenile's motion for a required finding of not delinquent with respect to two of the complaints charging the juvenile with one count of rape of Ned and one count of kidnapping Ned. The jury subsequently found the juvenile delinquent on all charges except one count of indecent assault and battery of Ned. On March 25, 1992, the juvenile was committed to the Department of Youth Services.[3] The juvenile filed a timely notice of appeal, and we transferred the case from the Appeals Court on our own motion.

The juvenile asserts five issues on appeal. First, he argues that G. L. c. 233, § 81, on its face violates his right to confront the witnesses against him as guaranteed under art. 12

---

"(6) the child is not competent to testify.

"(*c*) If a finding of unavailability is made, the out-of-court statement shall be admitted if the judge further finds: (1) after holding a separate hearing, that such statement was made under oath, that it was accurately recorded and preserved, and there was sufficient opportunity to cross-examine; or (2) after holding a separate hearing and, where practicable and where not inconsistent with the best interests of the child, meeting with the child, that such statement was made under circumstances inherently demonstrating a special guarantee of reliability.

"For the purposes of finding circumstances demonstrating reliability pursuant to clause (2) of subsection (*c*), a judge may consider whether the relator documented the child witness's statement, and shall consider the following factors:

"(i) the clarity of the statement, meaning, the child's ·capacity to observe, remember, and give expression to that which such child has seen, heard, or experienced; provided, however, that a finding under this clause shall be supported by expert testimony from a treating psychiatrist, psychologist, or clinician;

"(ii) the time, content and circumstances of the statement;

"(iii) the child's sincerity and ability to appreciate the consequences of such statement.

"(*d*) An out-of-court statement which is admissible by common law or by statute shall remain admissible notwithstanding the provisions of this section."

[3]The juvenile's motion for a stay of execution of his sentence was denied.

of the Declaration of Rights of the Massachusetts Constitution. Second, the juvenile argues that G. L. c. 233, § 81, is unconstitutional as applied in this case,[4] and that the judge did not comply with the requirements of the statute. Third, the juvenile asserts that the judge erred in allowing an expert opinion on the ultimate issue in the case. Fourth, the juvenile asserts that the judge erred in allowing hearsay testimony under the guise of fresh complaint. Fifth, the juvenile asserts that the judge committed reversible error when he refused to give certain requested instructions to the jury on the credibility of child witnesses.

We reverse because the judge erred in allowing an expert to testify that, in her opinion, Donald and Ned were sexually abused. We need not, therefore, reach the juvenile's other assertions of error. However, because the issue may arise on retrial, we discuss some of the juvenile's arguments in regard to G. L. c. 233, § 81.

*Facts.* We summarize the evidence before the jury. In the summer of 1990, the juvenile constructed a tree house near his home. Several neighborhood children assisted in building the tree house, including Donald, Peter, and Ned, the complainants. One could climb up to the tree house using either a ladder or a rope. After the tree house was built, the three younger children played in and around it with the older boys, the juvenile and his cousin.

Donald and Peter testified that in this location, the juvenile and his cousin touched the three younger boys, performed acts on the younger boys amounting to oral and anal rape, and forced them to perform similar acts on the older boys as well as on each other. The juvenile and his cousin also allegedly forced the three younger boys to take off their clothes and to watch as the older boys pulled down their pants and performed sexual acts on each other. Donald testified that the juvenile had, on several occasions, pulled up the ladder and rope to the tree house and blocked the door to

[4]Because the juvenile bases the first two arguments solely on State constitutional grounds, we consider these issues only under art. 12.

prevent the younger boys from leaving. Neither Donald nor Peter came forward immediately, nor could either boy state when precisely the abuse had occurred. Both children, however, did relate the timing of the acts of sexual abuse to the construction of the tree house.

Following the alleged abuse, Dr. Deborah Madansky, a child psychiatrist and an expert in child abuse, conducted physical examinations and clinical interviews of Donald and Ned. She also conducted separate interviews with their parents. At trial, she testified generally about the effect of sexual abuse on children, and she explained the psychological dimensions of disclosure. Dr. Madansky testified, over objection, that in her opinion Donald and Ned had been sexually abused. She also relayed to the jury, over objection, what Ned had told her about the abuse.

As noted above, during the course of the trial, the judge determined that Ned was not competent to testify.[5] He found that Ned could relate the events and be cross-examined. The judge further found that Ned could articulate the difference between the truth and a lie. However, the trial judge was not convinced that Ned understood the consequences of lying. Subsequently, the judge conducted a voir dire hearing to determine whether the hearsay statements Ned made to his mother should be admitted under G. L. c. 233, § 81.

During the voir dire hearing, Ned's mother testified that Ned first disclosed the alleged abuse to her in May, 1991. She took ten pages of notes while Ned made the disclosures, and recorded his statements in a journal. She also told about

---

[5]When the judge subsequently declared Ned incompetent to testify, the juvenile moved for a mistrial. On the next day of trial, the judge recounted for the record what had occurred during an in camera unrecorded interview with Ned. The judge then noted for the record his reasons for allowing Dr. Madansky to relate what Ned and Donald had told her and to give her opinion as to whether the two boys had been sexually abused. The judge also acknowledged that he had allowed the testimony over defense counsel's timely objection. The judge then considered and rejected the juvenile's motion for a mistrial. Instead, the judge instructed the jury that they should disregard any of Dr. Madansky's testimony concerning Ned's statements to her.

certain disclosures made to her by Ned and Peter. Following her voir dire testimony, the judge concluded that Ned's hearsay statements could be admitted pursuant to G. L. c. 233, § 81.[6] He concluded that Ned's mother had made "more or less" contemporaneous notes of the statements. He considered the clarity of the statements and noted that Ned's statements to his mother were consistent with those he made to Dr. Madansky. The judge also found that the statements were made at the locus of the alleged abuse while Ned was not under undue stress. Consequently, the judge ruled that Ned's statements were made in circumstances inherently demonstrating a special guarantee of reliability. Ned's mother then testified before the jury about what Ned had told her about the alleged sexual abuse of the three children.

1. *Expert testimony.* The juvenile asserts that the judge committed reversible error in allowing Dr. Madansky, over defense counsel's objection, to give an opinion as to whether Ned and Donald had been the victims of sexual abuse. We agree.

A trial judge has broad discretion with respect to the admission of expert testimony. *Commonwealth v. Dockham,* 405 Mass. 618, 628 (1989). Expert testimony on matters within the witness's field of expertise is admissible when it will aid the jury in reaching a decision. *Id. Commonwealth v. Pikul,* 400 Mass. 550, 553 (1987). *Simon v. Solomon,* 385 Mass. 91, 105 (1982).

We have held that a question calling for an opinion which is in the domain of the expert's professional knowledge is not necessarily to be excluded merely because the expert's conclusion reaches or approaches the ultimate issue before the jury. *Commonwealth v. LaCorte,* 373 Mass. 700, 705 (1977). *Simon v. Solomon, supra* at 105. *Commonwealth v. Montmeny,* 360 Mass. 526, 527-528 (1971). "An expert may not, however, offer his opinion on issues that the jury are

---

[6]Defense counsel objected to the judge's decision on the grounds that G. L. c. 233, § 81, is unconstitutional, and further that the judge incorrectly applied the section's requirements.

equally competent to assess, such as credibility of witnesses."
*Simon* v. *Solomon, supra.* Such an opinion impermissibly
would intrude upon the jury's vital factfinding function.
*Commonwealth* v. *Ianello,* 401 Mass. 197, 201-202 (1987).
Cf. *Commonwealth* v. *Hudson,* 417 Mass. 536, 541 (1994)
(stating the same principle, but concluding that behavioral
characteristics were a proper subject for expert opinion). An
expert may not render an opinion about a witness's credibil-
ity because the jury are capable of making that assessment
without an expert's aid. *Ianello, supra* at 202. See *Common-
wealth* v. *Brusgulis,* 398 Mass. 325, 331 n.12 (1986)
("Whether a witness testifies truthfully or according to some
fictional script is for the jury to decide"). "On such ques-
tions, the influence of an expert's opinion may threaten the
independence of the jury's decision." *Simon* v. *Solomon,
supra* at 105.

We have allowed expert testimony relating generally to be-
havioral characteristics of sexual assault and sexual abuse
victims. *Commonwealth* v. *Mamay,* 407 Mass. 412, 421
(1990) (expert's testimony relating to rape and sexual assault
syndrome generally, and not relating to the victims, was
properly admitted). *Commonwealth* v. *Dockham, supra* at
630 (expert testimony about the general behavioral charac-
teristics of sexually abused children was admissible, where
expert made no references of comparison to the child wit-
ness). Such information is beyond the jury's common knowl-
edge and may aid them in reaching a decision. However, we
have never extended this holding to allow an expert to testify
that an alleged victim was in fact sexually assaulted.[7] We
refuse to do so in this case.

---

[7]Our decision in *Commonwealth* v. *Montmeny,* 360 Mass. 526 (1971),
does not dictate a different result. In that case, we held that a question as
to whether what the expert physician had "seen" was "consistent with" the
history that he had obtained from the victim was not an attempt to elicit
from the expert a direct opinion that the rape had occurred. *Id.* at 528.
We noted then, as we do now, that "[s]uch a direct opinion would have
been . . . beyond the witness's appropriate province as an expert witness."
*Id.*

Commonwealth *v.* Colin C., a juvenile.

Dr. Madansky's opinion testimony that Donald and Ned were sexually abused was tantamount to an expert opinion that the children's claims of sexual abuse were likely true. See *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 147-148 (1994). Although Dr. Madansky's testimony fell short of explicitly rendering an opinion on the credibility of the child witnesses, we see little difference in the final result. Her testimony that the child Ned was sexually abused, being based in large part on his statements to her, was essentially a statement vouching for Ned's credibility. It would be unrealistic to allow this type of expert testimony and then expect the jurors to ignore it when evaluating the credibility of the alleged child victims. Such testimony could substantially influence the jury's decision about whom to believe. See *Commonwealth* v. *Ianello, supra* at 201-202. It was within the province of the jury to determine whether the children were sexually abused. By allowing Dr. Madansky's opinion testimony that Donald and Ned were sexually abused, the judge committed reversible error.

2. *General Laws c. 233, § 81.* We next consider the juvenile's assertion that G. L. c. 233, § 81, on its face contravenes art. 12. We do not, however, rule that the statute is facially unconstitutional, since we need not reach that issue in light of our ruling, on other grounds, that the matter must go back for retrial. See *Manor* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 416 Mass. 820, 824 (1994) (constitutional issues should not be addressed except as a matter of last resort). We assume the statute to be facially valid, for purposes of discussion, but offer these comments for guidance on retrial.

The Justices analyzed the precursor to this statute in *Opinion of the Justices*, 406 Mass. 1201 (1989). That 1989 bill (Senate No. 795) would have allowed out-of-court statements to be admitted substantively in a number of circumstances, including where the child was unavailable as a witness for any of several reasons (including a refusal to testify), and there was corroborative evidence of sexual contact. *Id.* at 1202 n.2, 1211, 1217. We expressed a variety of concerns

with the proposed bill's constitutionality. For example, citing *Commonwealth* v. *Bohannon*, 385 Mass. 733, 745 (1982), we noted that the bill did not explicitly require a showing of good faith and due diligence in establishing unavailability. *Opinion of the Justices, supra* at 1211. We also stated that a child witness's refusal to testify does not reach that measure of necessity which justifies other hearsay exceptions. *Id.* See *Commonwealth* v. *Kirouac*, 405 Mass. 557, 562-563 (1989); *Commonwealth* v. *Brusgulis, supra* at 332. In addition, we were concerned because the bill did not require that a child witness's prior statements have been made under oath in order to be admitted for their truth. *Opinion of the Justices, supra* at 1212. Additionally, we stated that the criteria for determining the reliability of admissible statements under the bill were inadequate and that the proposed hearsay exception did not have the same guarantees of reliability as other hearsay exceptions. *Id.* at 1212-1213, 1215-1216.

The present statute, for the most part, seems to address the concerns we expressed in *Opinion of the Justices, supra.* We would, however, impose a further requirement for the use of child hearsay statements pursuant to the statute. We believe that, if a child witness's out-of-court statements are to be admitted substantively, there must be other evidence, independently admitted, that corroborates those hearsay statements.

Article 12 provides that every criminal defendant "shall have a right . . . to meet the witnesses against him face to face." In other cases interpreting art. 12, we have noted that this language establishes a clear constitutional mandate that should not be easily circumvented. See, e.g., *Commonwealth* v. *Johnson*, 417 Mass. 498, 501-502, 504 (1994); *Opinion of the Justices, supra* at 1207, 1209-1210; *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 553 (1988); *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741-742 (1982). Indeed, "[c]onstitutional language more definitively guaranteeing the right to a direct confrontation between witness and accused is difficult to imagine." *Commonwealth* v. *Bergstrom, supra* at 541-542. The plain interpretation of the phrase "to meet

the witnesses against him face to face" is that "the accused shall not be tried without the presence, in a court of law, of both himself and the witnesses testifying against him." *Id.* at 542.

While we have emphasized the importance of the constitutionally guaranteed confrontation right, we also "recognize that the right to confrontation under art. 12 . . . may yield in appropriate, although limited, circumstances." *Commonwealth* v. *Johnson, supra* at 503. See *Commonwealth* v. *Bergstrom, supra* at 545-546. "[T]he necessities of the case and the attainment of justice justify admission of hearsay against a criminal defendant in some cases." *Commonwealth* v. *Bohannon, supra* at 741-742. See, e.g., *Commonwealth* v. *Galloway,* 404 Mass. 204, 207 (1989) (declaration against penal interest); *Commonwealth* v. *Polian,* 288 Mass. 494, 497 (1934) (dying declaration with knowledge of impending death); *Commonwealth* v. *Gallo,* 275 Mass. 320, 333-334 (1931) (prior recorded testimony). See also *Opinion of the Justices, supra* at 1207-1209, 1212-1213.

Although the confrontation right may yield in limited circumstances, our Constitution dictates that a hearsay statement may be used against a criminal defendant only when such use is necessary and when the statement is reliable. See *Opinion of the Justices, supra* at 1209-1210; *Commonwealth* v. *Bergstrom, supra* at 545. The prosecution bears the burden of showing the necessity for admitting the out-of-court statement by establishing the declarant's unavailability to testify during the trial. *Opinion of the Justices, supra* at 1210. Once unavailability is established, the statement may be admissible if imbued with such "particularized guarantees of trustworthiness" that there is no material departure from the reasoning behind the confrontation right. See *Commonwealth* v. *Bergstrom, supra* at 545; *Commonwealth* v. *Trigones,* 397 Mass. 633, 637-638 (1986). Unless both unavailability and reliability are established, an out-of-court statement cannot be admitted against a criminal defendant. The confrontation right remains paramount. See *Commonwealth* v. *Bergstrom, supra* at 546.

We recognize the need to protect children. Additionally, we are aware of the constitutional need to protect the rights of criminal defendants. "The right of the accused to be tried in the manner which our Constitution guarantees cannot dissolve under the pressures of changing social circumstance or societal focus. We have recognized before, in the context of interpreting art. 12, that '[c]hanged conditions afford no warrant for straining the Constitution.'" *Commonwealth* v. *Bergstrom, supra* at 553, quoting *Commonwealth* v. *Gallo, supra* at 334. Indeed, "[s]ociety may justify a person's conviction only after a trial scrupulous in its adherence to a process which, so far as humanly possible, assures that the innocent are not mistakenly deprived of liberty." *Commonwealth* v. *Bergstrom, supra.* Consequently, we set out procedures that a trial judge should follow when admitting such evidence pursuant to the statute.[8]

We begin by discussing the Commonwealth's responsibilities when attempting to use child hearsay statements pursuant to G. L. c. 233, § 81. First, in order to provide the defendant with a meaningful opportunity to respond to hearsay allegations, the Commonwealth must give prior notice to the criminal defendant that it will seek to use such hearsay statements. Second, the "Commonwealth must show, by more than a mere preponderance of evidence, a compelling need for use of such a procedure." *Commonwealth* v. *Bergstrom, supra* at 550. We noted in the *Bergstrom* case that "[s]uch a compelling need could be shown where, by proof beyond a reasonable doubt, the recording of the testimony of a child witness outside the courtroom . . . is shown to be necessary so

---

[8]We discuss procedures supplemental to those outlined in the statute. We note, however, that the judge also must strictly adhere to the statutory procedures.

For example, in this case there was no expert testimony with respect to "the clarity of the statement, meaning, the child's capacity to observe, remember, and give expression to that which such child has seen, heard, or experienced." This contravenes the explicit requirement of subsection (*c*) (i) that a treating psychiatrist, psychologist, or clinician so testify when a judge finds that the child's prior statement was "made under circumstances inherently demonstrating a special guarantee of reliability."

as to avoid severe and long lasting emotional trauma to the child." *Id.* at 550. A similar requirement of necessity should be imposed where the Commonwealth wishes to introduce child hearsay statements pursuant to G. L. c. 233, § 81.

We further require that any separate hearing regarding the reliability of a child witness's out-of-court statement be on the record, and that the judge's determination that the child's statement is reliable be supported by specific findings on the record.[9] Where possible without causing severe emotional trauma to the child witness, the defendant, and defense counsel should be given the opportunity to be present at the hearing. Expert testimony may aid the trial judge in determining whether the defendant's and defense counsel's presence at the hearing would severely traumatize the child witness.

Although the trial judge has discretion in finding both unavailability and reliability under G. L. c. 233, § 81, we note that, if the judge determines that the child is unavailable because the child is "incompetent to testify," the judge's reasons for finding the child incompetent should not be those that call into question the reliability of the child's out-of-court statements. For example, if the trial judge finds that the child witness is incompetent to testify because the child is unable to tell the truth at the time of trial or does not know the consequences of not telling the truth in court, the judge should exercise extreme caution in allowing that child's out-of-court statements in evidence pursuant to G. L. c. 233, § 81.[10]

---

[9]We do not consider the judge's oral findings of reliability in this case to have been adequately specific, especially since he apparently relied erroneously on the expert's opinion (see part 1, *supra*) that Ned had been sexually abused.

[10]We note that the jury in this case were not informed that the judge had declared Ned to be incompetent because Ned "couldn't convey to me that he understood what the consequences would be of lying." Putting aside the question of how such a witness's extra judicial hearsay statements could be viewed as "reliable" pursuant to G. L. c. 233, § 81 (*a*) and (*c*), it would seem highly preferable, on request, for the jury to have been informed of this finding. See G. L. c. 233, § 81 (*c*) (iii).

Finally, we require that, in order to admit a child witness's hearsay statements for substantive purposes under G. L. c. 233, § 81, there must be other independently admitted evidence that corroborates those out-of-court statements. This corroboration requirement would provide an additional guarantee of trustworthiness that would justify admitting the statement as substantive evidence. See *Commonwealth* v. *Bergstrom, supra* at 545.[11]

The judgments are reversed and the verdicts are set aside. The case is remanded for a new trial consistent with this opinion.

*So ordered.*[12]

---

[11]Other related concerns of the court arising from a care and protection hearing, governed by G. L. c. 233, § 83, are discussed in *Care & Protection of Rebecca, post* 67 (1994), released today.

[12]Because of this opinion's statement of requirements that must be met in order to warrant the admission of hearsay statements pursuant to G. L. c. 233, § 81, any future challenges to the facial validity of § 81 should be considered in light of those requirements.