COMMONWEALTH *vs*. DOUGLAS A. KIROUAC.

Hampshire. April 4, 1989. — August 10, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Indecent Assault and Battery. Constitutional Law*, Confrontation of witnesses, Double jeopardy. *Evidence*, Cross-examination, Fresh complaint, Videotape. *Witness*, Child.

At the trial of sexual offenses in which the child victim's testimony was crucial to the prosecution's case, her total refusal to cooperate on cross-examination was so prejudicial as to deny the defendant his constitutional right to confront the witness. [560-564]

A videotape of a police interview with the alleged victim of sexual abuse, received as fresh complaint evidence at a criminal trial, that included descriptions of serious criminal conduct on the part of the defendant of which no probative evidence had been introduced exceeded the proper limits of corroborating fresh complaint evidence, and where the videotape was not capable of satisfactory redaction, it was not to be admissible in evidence at any retrial of the defendant. [564-565]

INDICTMENT found and returned in the Superior Court Department on June 18, 1986.

The case was tried before *John F. Murphy, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Regina Zupan*, Committee for Public Counsel Services, for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. We reverse the defendant's conviction of indecent assault and battery on a child under the age of fourteen. The lack of cooperation by the alleged child victim, whom we shall call Valerie (not her real name), during the defendant's attempts to cross-examine her denied the defendant any meaningful opportunity for cross-examination.[1]

[1] Valerie's attitude of noncooperation may also have harmed the Commonwealth's interests. She gave no evidence supporting a charge of rape on

The indictment alleged multiple rapes and indecent assaults and batteries on Valerie, the defendant's natural daughter. The defendant had court ordered visitation rights. Visits occurred every other week at the defendant's house, where he lived with his parents and several siblings. Valerie was four years old when she first described the acts allegedly perpetrated by the defendant, and she was six at the time of trial. Valerie testified on direct examination that "bad" things had happened on the defendant's bed and that the defendant had touched her crotch with his hand. She did not, however, testify to any incidents of penetration. On both direct and cross-examination, the child frequently responded, "I'm tired," or "I want to go to my nanny's." We shall return to the nature of Valerie's testimony on cross-examination.

The mother testified, by way of fresh complaint evidence, that, in May, 1986, Valerie told her that the defendant, whom Valerie called "Dougie," "made her lay down on the bed so that he can play with her and stick an object up her." The next morning, the mother brought the child to see the family physician.

The family physician testified, by way of fresh complaint evidence, that he had questioned the child and she had responded, "Dougie played nasty with me," and had pointed to her genitals. She had declined to answer any more of the doctor's questions and had become reticent when he tried to examine her. He had checked for external injury and had found none. After concluding his examination, he reported the incident to the Department of Social Services (department).

Five days later, another doctor examined Valerie. He testified that Valerie's hymenal membrane was not fully intact. He concluded that, although his findings were consistent with and suggestive of abuse, they were not conclusive of abuse.

A social worker in the department was assigned to investigate the allegations of sexual abuse against the defendant. An interview with Valerie was arranged with the Sexual Assault Inter-

which the defendant was also being tried. The judge allowed the defendant's motion for a required finding of not guilty on that charge.

A judge of the Appeals Court stayed execution of sentence pending appeal.

vention Network, a group composed of professionals trained to handle cases of alleged sexual assault. A female State trooper conducted the interview on May 6, 1986, at the Franklin County Mental Health Center. The interview, which lasted for forty-five minutes, was recorded on videotape through a two-way mirror.

Initially, when questioned as to whether anybody had touched her in a way she did not like, Valerie referred to conduct of other children. After discussing what her female cousin, a contemporary, had done and after avoiding answering questions seeking other incidents of improper touching, Valerie announced that she needed to go to the bathroom. The department's social worker took Valerie to the bathroom. When the two returned a few minutes later, the social worker told the State trooper that Valerie had told her something that Valerie might want to discuss. Valerie then said, pointing to her crotch, "Dougie play [*sic*] nasty with me here." The focus of the interview then shifted from incidents with her cousin to exploration of incidents between Valerie and the defendant.

Valerie described acts amounting to both rape and indecent assault and battery. Specifically, she said that the defendant touched her "tookie" with a pen,[2] that the defendant had kissed her "tookie," and that the defendant had taken off his clothes and played nasty in her "wheezie" with a pen, his "wheezie," and a "licking stick." Valerie also demonstrated behavior she called "humping" by lying face-to-face on top of an anatomically correct doll and moving back and forth in a rocking motion. She stated that "Dougie" had "humped" her.

During the interview Valerie also marked on pictures representing a female child where "Dougie" had touched her (vaginal area, buttocks, and shoulder blade). These marked pictures were offered as exhibits at trial and were admitted over objection. The videotape was also shown in its entirety to the jury, over the defendant's objection, as fresh complaint evidence.

We shall first discuss the inadequacy of the opportunity the defendant had to cross-examine Valerie. Our conclusion on

---

[2] Valerie alternatively referred to her genitalia as her "tookie," "wheezie," and "private." She also referred to male genitalia as a "wheezie."

that issue will be sufficient to resolve the defendant's appeal, which we transferred here on our own motion. We shall discuss, however, two matters that may become important in further proceedings in this case.

1. The defendant was denied his State and Federal constitutional right to confront Valerie through cross-examination. He was, of course, not entitled to a witness whose memory was perfect (or even good) or whose attention span was long (or even normal). He was entitled, however, to a different response from Valerie than he received.

Valerie testified reluctantly on direct examination, particularly as to what happened between Dougie and her at his house, but she did testify that Dougie touched her on her "tookie." She then announced that she was tired. The prosecutor's attempts to obtain further information from Valerie failed.[3] Court adjourned for the day.

On the next day, Valerie was an even more reluctant witness on continued direct examination, and the prosecutor, believing that Valerie was not going to testify to anything else, abandoned her direct questioning without obtaining any further inculpatory testimony. The prosecutor was right; Valerie was through talking about what, if anything, Dougie had done. The Commonwealth concedes that Valerie resisted answering nearly all questions put to her on cross-examination. We set forth in the margin that portion of Valerie's cross-examination that was directed toward her inculpatory testimony on direct examination.[4]

---

[3] A prosecutor's statement to a reluctant child witness that, "I need to ask you just a couple more questions and then we'll be done," although technically accurate, does not fairly acknowledge that there will be cross-examination.

[4] DEFENSE COUNSEL: "[Valerie], do you remember yesterday you talked about some things that happened to you? Do you remember that?"
THE WITNESS: "No."
DEFENSE COUNSEL: "You don't remember that?"
THE WITNESS: (Witness shaking head).
DEFENSE COUNSEL: "Do you remember talking about Dougie at all?"
THE WITNESS: (Witness shaking head).
DEFENSE COUNSEL: "Is that 'No'?"
THE WITNESS: "I forgot."

Commonwealth *v.* Kirouac.

In deciding whether a defendant's constitutional right to cross-examine and thus confront a witness against him has been denied because of an unreasonable limitation of cross-examination, a court must weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination. The determination can only be made on a case-by-case basis. Cross-examination that is somewhat impeded, but

---

DEFENSE COUNSEL: "Is that 'no' or 'yes'?"

THE WITNESS: "No."

DEFENSE COUNSEL: "You didn't talk about Dougie?"

THE WITNESS: "I'm tired. I wish I could go to my nanny's?"

DEFENSE COUNSEL: "Do you remember saying that something happened to you, [Valerie]? Do you remember that?"

THE WITNESS: (Witness shaking head).

DEFENSE COUNSEL: "You don't remember talking about that at all, [Valerie]?"

THE WITNESS: "I'm trying to get this."

DEFENSE COUNSEL: "You're trying to take your panda's jacket off?"

THE WITNESS: "Yeah, because he's hot."

DEFENSE COUNSEL: "He's hot, yeah."

[VICTIM-WITNESS ASSISTANT]: "I don't think it comes off."

THE WITNESS: "Yes, it does. It came off in my bed yesterday."

[VICTIM-WITNESS ASSISTANT]: "You have to answer [defense counsel's] questions, then we can take care of panda."

DEFENSE COUNSEL: "[Valerie], do you remember yesterday when you said something happened to you?"

THE WITNESS: "No."

DEFENSE COUNSEL: You don't remember that? Do you remember talking about Dougie?"

THE WITNESS: "I'm tired."

[VICTIM-WITNESS ASSISTANT]: "You have to talk to [defense counsel] first and answer his questions, okay?"

THE WITNESS: "I want my nanna. I got two quarters."

DEFENSE COUNSEL: "Do you want some more water, [Valerie]?"

THE WITNESS: "It spilled on the floor."

DEFENSE COUNSEL: "That's okay. Do you remember yesterday when you talked about Dougie, [Valerie]?"

THE WITNESS: "No."

DEFENSE COUNSEL: "You don't remember that?"

THE WITNESS: "No."

DEFENSE COUNSEL: "Do you remember talking about something that happened to you, [Valerie]?"

THE WITNESS: "I want to go to nanny's."

DEFENSE COUNSEL: "[Valerie], you're tired?"

THE WITNESS: (Witness nodding).

DEFENSE COUNSEL: "Your Honor, could we approach side bar, please?"

not totally foreclosed, presents a weaker case for finding a denial of rights than a complete absence of cross-examination. Compare *United States* v. *Owens*, 484 U.S. 554, 559-560 (1988) (no violation of constitutional right to confrontation where victim remembered that he had earlier identified defendant as his assailant but at trial could not explain his identification); *Delaware* v. *Fensterer*, 474 U.S. 15, 20-22 (1985) (witness memory lapse on one point; conviction upheld); *Commonwealth* v. *Barbosa*, 399 Mass. 841, 845-848 (1987) (deaf-mute victim testifying through interpreter; conviction upheld) with *Commonwealth* v. *Funches*, 379 Mass. 283, 292-293 (1979) (direct testimony of witness who invoked the privilege against self-incrimination during cross-examination should have been struck where facts sought to be raised on cross-examination went to the essence of the defense); *Commonwealth* v. *Johnson*, 365 Mass. 534, 546-547 (1974), *S.C.*, 372 Mass. 185 (1977) (eyewitness to murder refused out of fear to identify persons present at the scene and known to him; direct testimony should have been struck). Cf. *Savage* v. *Birckhead*, 20 Pick. 167, 172 (1838) (favorable deposition testimony should be struck if witness refuses to answer questions on cross-examination on matters within his knowledge).

Valerie's testimony was crucial to the prosecution's case, and her total refusal to cooperate on cross-examination was so prejudicial as to deny the defendant his constitutional right to cross-examine her. The issue in this case is not whether the defendant had an opportunity to cross-examine that was not exercised and hence waived. See 5 J. Wigmore, Evidence § 1371 at 55-56 (Chadbourn rev. 1974 & Supp. 1989). This case more closely parallels a case in which a witness declines to answer all relevant questions on cross-examination or, because of illness or otherwise, is unavailable for cross-examination.[5]

---

[5] For cases where after giving testimony on direct examination, the witness died or became too ill to be cross-examined, see, e.g., *United States* v. *Malinsky*, 153 F. Supp. 321 (S.D.N.Y. 1957) (where witness suffered stroke on stand in full view of the jury, after prosecutor had stressed the significance of his prospective testimony, sound judicial administration

Since the briefs in this case were filed, this court has decided *Commonwealth* v. *Amirault*, 404 Mass. 221 (1989), involving a claim that indictments alleging rape and indecent assault and battery of a child should have been dismissed because the defendant's right to confrontation was denied. The court concluded that the opportunity to cross-examine the child witness was not denied where, in response to some of defense counsel's questions about matters to which she had earlier testified, the child witness stated that she did not remember.

In the *Amirault* opinion, the court distinguished cases involving a refusal to answer questions from the situation then before it. *Id.* at 234. We have reviewed the testimony of the child witness in the *Amirault* case and find it to be qualitatively different from Valerie's testimony. The seven year old witness in the *Amirault* case answered almost all questions asked of her, did not assert a lapse of memory as a general response to questions, and appears to have fully and willingly participated in the cross-examination to the best of her ability. Nothing like what appears in this case (see note 4 above) occurred

---

required granting of defendant's motion for new trial); *People* v. *Cole*, 43 N.Y. 508, 512-513 (1871) (direct testimony of prosecution witness who fainted and became too ill to be cross-examined should have been struck). Cf. *Commonwealth* v. *Funches*, 379 Mass. 283, 292 n.12 (1979). See generally 5 J. Wigmore, Evidence § 1391 (Chadbourn rev. 1974 & Supp. 1989); McCormick, Evidence § 19, at 49 & n.16 (3d ed. 1984). Where cross-examination was substantially complete before the witness was incapacitated, it is within the discretion of the trial judge to let the witness's direct testimony go to the jury. See, e.g., *Fuller* v. *Rice*, 4 Gray 343, 345 (1855); *Marcotte* v. *Harrison*, 443 A.2d 1225, 1232-1233 (R.I. 1982) (deposition testimony).

It is generally agreed that the direct testimony of a witness who refuses to answer relevant questions on cross-examination on the ground that his answers might tend to incriminate him should be struck unless the trial judge determines that the testimony was merely collateral or cumulative. See *Commonwealth* v. *Funches*, *supra* at 292-293. See also *United States* v. *Lyons*, 703 F.2d 815, 819 (5th Cir. 1983); *Klein* v. *Harris*, 667 F.2d 274, 289 (2d Cir. 1981); *United States* v. *Frank*, 520 F.2d 1287, 1292 (2d Cir. 1975), cert. denied, 423 U.S. 1087 (1976); *Johnson* v. *United States*, 418 A.2d 136, 140-142 (D.C. 1980); *People* v. *Farruggia*, 77 A.D.2d 447, 452-453 (N.Y. 1980).

there. In this case, there was no meaningful opportunity to cross-examine Valerie.[6]

2. The defendant has not argued that, if we conclude that he was denied his right to cross-examine Valerie, he may not be retried. Principles of double jeopardy generally do not bar a retrial where the evidence was sufficient to warrant a conviction but an appellate court later concludes that there was error in the admission of some of the evidence essential to that conviction. See *Lockhart* v. *Nelson*, U.S. , (1988) (109 S.Ct. 285, 287 [1988]); *Commonwealth* v. *Taylor*, 383 Mass. 272, 284 (1981). We have barred retrial, however, where the prosecution had no reasonable prospect of filling the gap in its proof that would be created by the exclusion of the inadmissible evidence. See *Commonwealth* v *Funches*, 379 Mass. 283 (1979); *Commonwealth* v. *Silva*, 366 Mass. 402 (1974). We do not now resolve this unargued issue, which is open for consideration on remand.

3. Because there may be a retrial, we discuss the question of the admissibility, for the purposes of corroboration, of the videotape of the State trooper's conversation with Valerie.

In *Commonwealth* v. *Bailey*, 370 Mass. 388 (1976), Justice Kaplan thoroughly analyzed and explained the basis for the rule in this Commonwealth (and in only a few other States) that permits the details of a fresh complaint (and not just the fact of the complaint) to be admitted in evidence but only in corroboration of the alleged victim's in-court testimony. His discussion arose in the context of an adult complainant, a situation in which the defendant may assert the victim's consent and in which the detail, more than the fact, of the complaint may be instructive to the jury in resolving the credibility of the victim on the issue of consent. *Id.* at 394-395. The circumstances concerning fresh complaint evidence in a case involving alleged sexual abuse of a child may differ from those of a case involving an adult victim. In child sexual abuse cases,

---

[6] The defendant sought a mistrial because of Valerie's noncooperation. The better practice is to move to strike the witness's testimony or perhaps to seek reconsideration of the judge's ruling that the child witness was competent to testify. See *Kentucky* v. *Stincer*, 482 U.S. 730, 743-744 (1987).

consent is not a factor. The promptness of a child victim's complaint generally seems less important in deciding on the admissibility of fresh complaint evidence. See *Commonwealth v. Amirault*, 404 Mass. 221, 229 (1988).

We need not now resolve the broad issue of the admissibility of fresh complaint evidence appearing on a videotape of a police interview with an alleged child victim. In this case, the videotape should not have been shown to the jury because it did not simply corroborate the victim witness. By describing conduct that Valerie had not mentioned in her testimony, the videotape exceeded the practice we have permitted in this State of allowing fresh complaint evidence of certain details of the events to which the victim had testified more generally. See *Commonwealth v. Bailey*, 370 Mass. 388, 392 (1976); *Commonwealth v. Lagacy*, 23 Mass. App. Ct. 622, 629 n.8 (1987). See also *Commonwealth v. McDuffie*, 16 Mass. App. Ct. 1016 (1983) (rape incident report). The videotape included descriptions of rape, a serious crime of which no probative evidence was introduced that could be corroborated by fresh complaint evidence. The admission of the child's videotaped statements concerning rape exceeded the proper limits of "corroborating" fresh complaint evidence and was prejudicial.

At any retrial the videotape should not be shown to the jury. We think it cannot satisfactorily be redacted. The State trooper may, however, testify in corroboration of Valerie's testimony concerning indecent assault and battery, but she should not testify concerning Valerie's statements indicating rape.

4. The judgment is reversed, the verdict is set aside, and the case is remanded for further proceedings.

*So ordered.*